## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 07 B 13733 |
| | ) | |
| DAVID J. JACOBS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| ——————————— | ) | |
| | ) | |
| JUAN ZAMORA, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Case No. 07 A 00959 |
| v. | ) | |
| | ) | |
| DAVID J. JACOBS, | ) | Honorable Susan Pierson Sonderby |
| | ) | |
| Defendant. | ) | |
| ——————————— | ) | |

### MEMORANDUM OPINION

This matter comes before the court on the motion of plaintiff Juan Zamora (the "Plaintiff") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the second amended complaint seeking to except from discharge a debt owed to the Plaintiff by debtor-defendant David J. Jacobs (the "Defendant") under sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code, 11 U.S.C. §§ 523(a)(2)(A), (a)(4), (a)(6). For the reasons set forth below, the court grants the motion in its entirety in favor of the Plaintiff and enters judgment that the debt in the amount of $271,581.90, plus interest of 9% per year which has been accruing since January 4, 2006, is nondischargeable under the statutory exceptions.

# I. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

The proceeding concerns a determination of the dischargeability of a particular debt and is

therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I).  Venue is properly placed in this

court pursuant to 28 U.S.C. § 1409(a).

# II. SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the movant must meet the criteria

set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary

proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule 56(c) provides, in pertinent

part, as follows:

> The judgment sought should be rendered if the pleadings, the
> discovery and disclosure materials on file, and any affidavits show
> that there is no genuine issue as to any material fact and that the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2).  The primary purpose of the summary judgment procedure is to avoid

unnecessary trials where no genuine issues of material fact are in dispute.  *See Trautvetter v.*

*Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378

7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n*

*of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)).  Thus, on a motion for summary judgment,

the court has "one task and one task only:  to decide, based on the evidence of record, whether

there is any material dispute of fact that requires a trial."  *Kodish v. Oakbrook Terrace Fire Prot.*

*Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (internal quotation omitted). Where the material facts

are not in dispute, the only issue is whether the moving party is entitled to judgment as a matter

of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th

Cir. 1998).

All reasonable inferences drawn from the underlying facts must be viewed in a light most

favorable to the nonmoving party. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500

(7th Cir. 2008); *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 666-67

(7th Cir. 2005). The existence of a material factual dispute is sufficient only if the disputed fact

is determinative of the outcome under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002).

"[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the

inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d

327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to

fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v.*

*Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn*

*Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing

the . . . court of the basis for [his] motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation omitted). Once the moving party

satisfies his initial burden of production, the party opposing the motion may not rest on the mere

allegations or denials in his pleadings; rather, his response must set forth specific facts showing

that there is a genuine issue for trial. *See id.* at 324; *Anderson*, 477 U.S. at 248; *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Outlaw v. Newkirk*, 259 F.3d 833,

837 (7th Cir. 2001).

When resolution of a dispositive issue requires the court to determine a party's state of

mind, summary judgment is usually inappropriate, because the credibility of the witness cannot

be ascertained without the trier of fact's observation of the demeanor of the witness during direct

and cross examination. *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004); *KeyBank USA,*

*N.A. v. Garcia (In re Garcia)*, Nos. 03 B 50412, 04 A 00821, 2004 WL 2862311, at *2 (Bankr.

N.D. Ill. Dec. 13, 2004); *Am Isuzu Motors, Inc. v. George's Comet Motorcars, Ltd. (In re*

*George's Comet Motorcars, Ltd.)*, 100 B.R. 403, 405 (Bankr. N.D. Ill. 1989). If the defendant's

state of mind is a necessary element of the plaintiff's case, courts must be careful in granting

summary judgment based solely on the defendant's categorical denial that the required mental

state existed. *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir.

1989). "Summary judgment is appropriate, however, even when issues of scienter are involved,

if in response to a properly supported motion for summary judgment, the non-movant offers no

specific facts to show that there is a genuine issue for trial or simply relies on mere allegations or

denials." *George's Comet Motorcars*, 100 B.R. at 405.

Under Local Bankruptcy Rule 7056, a motion for summary judgment imposes special

procedural burdens on the parties. Specifically, the Rule requires the moving party to

supplement its motion and supporting memorandum with a statement of undisputed material

facts (the "7056-1 Statement"). Local Bankr. R. 7056-1. The 7056-1 Statement "must consist of

4

short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr. R. 7056-1(B). The Plaintiff has filed a 7056-1 Statement that complies with the requirements of the Rule. It contains numbered paragraphs setting out assertedly undisputed facts with specific references to accompanying exhibits.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to submit a response (the "7056-2 Statement") to the movant's 7056-1 Statement and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each such denial. Local Bankr. R. 7056-2. The opposing party must respond "to each numbered paragraph in the moving party's statement" and make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bank. R. 7056-2(A)(2)(a). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr. R. 7056-2(B). Facts that are denied without evidentiary support for the denial are admitted. *Maxwell v. Penn Media (In re marchFirst, Inc.)*, Nos. 01 B 24742, 03 A 1141, 2010 WL 4027723, at *2 (Bankr. N.D. Ill. Oct. 14, 2010). In addition, facts to which the opposing party offers a response that is neither a direct admission nor a denial are admitted. *Id.*

The Defendant has filed a 7056-2 Statement that complies, in part, with the Rule. He has responded to each numbered paragraph in the Plaintiff's 7056-1 Statement and has made specific references to supporting materials upon which he relies. Virtually all of those references are to paragraphs in an affidavit of the Defendant attached to his 7056-2 Statement as Exhibit A. In

5

several instances, however, those references do not offer evidentiary support for the denials in the

Defendant's 7056-2 Statement. (*See* Def. L.R. 7056-2 Resp. ¶¶ 8, 11, 12, 13, 16, 17, 18, 21, 22,

23, 28, 36, 38.) In other instances, the Defendant notes, by way of a purported explanation, that

there is "no sufficient factual basis" for the Plaintiff's allegations. (*See id.* ¶¶ 7, 18, 36, 38.)

Each of these statements of fact for which the Defendant has not proffered evidentiary support

will be deemed admitted. *See* Local Bankr. R. 7056-2(B); *see also marchFirst*, 2010 WL

4027723, at *2; *Bank One, NA v. Knopfler (In re Holstein)*, Nos. 00 B 18138, 03 A 00638, 2004

WL 26516, at *1 n.1 (Bankr. N.D. Ill. Jan. 5, 2004).

The Defendant has set forth additional material facts that he alleges are uncontested and

require the denial of summary judgment pursuant to Rule 7056-2(A)(2)(b). The Plaintiff objects

to several of these statements of fact as vague, conclusory, lacking foundation, and/or lacking

specificity. (*See* Pl. Resp. to Def. 7056-2 Resp. Add'l Facts ¶¶ 50, 53, 54, 57, 65.[1]) A

respondent may admit facts or deny them; there are no other options. Local Bankr. R. 7056-1(C),

7056-2(B); *see also marchFirst*, 2010 WL 4027723, at *2 (adding that a respondent can,

alternatively, "suggest, in accordance with Rule 56(f) that for specified reasons facts essential to

his opposition cannot be presented"). Thus, those statements of fact to which the Plaintiff

objects–and therefore denies without evidentiary support–are deemed admitted. *See* Local

Bankr. R. 7056-1(C).

---

[1] Two paragraphs in the Defendant's additional material facts are erroneously numbered
as paragraph 50. The paragraph to which the Plaintiff objects is the second one numbered 50.

### III. FACTS AND BACKGROUND

All of the material facts in this case either are undisputed or have been deemed admitted pursuant to Local Bankruptcy Rule 7056-2(B).

At all times relevant to the complaint, the Plaintiff was an hourly employee of Northwestern Plating Works, Inc. ("Northwestern Plating"), a metal finishing business located in Chicago, Illinois.[2] (Pl. L.R. 7056-1 Stmt., Ex. 5, ¶ 6a; Def. L.R. 7056-2 Resp. ¶¶ 7, 8.) From December 1999 through August 2005, the Defendant was the president, sole owner, and operator of Northwestern Plating. (Pl. L.R. 7056-1 Stmt., Ex. 5, ¶ 6a; Def. L.R. 7056-2 Resp. ¶ 9.) In those capacities, he oversaw the day-to-day affairs of the company, was the signatory on the corporate bank account, signed the paychecks at issue in this dispute, and was responsible for ensuring that the Plaintiff both was paid and received various employee benefits. (Def. L.R. 7056-2 Resp. ¶¶ 10, 14.)

Among those benefits, Northwestern Plating provided the Plaintiff with health insurance, part of the cost of which was deducted from his paycheck. (*Id.* ¶ 20.) The Plaintiff was also entitled to four weeks of paid vacation each year. (Pl. L.R. 7056-1 Stmt., Ex. 1, ¶ 9.) According to the Plaintiff, as of August 2005, he had accumulated "at least fourteen weeks of paid vacation," which he had not used but was allowed to accumulate. (*Id.* ¶ 25.) The Defendant denies this contention, noting that company policy did not allow for the banking of unused vacation time and that, in any event, all employee benefits, including payment for unused vacation time, ceased when Northwestern Plating closed its doors. (*See* Def. L.R. 7056-2 Resp.,

---

[2] According to a paycheck record for the period ending July 13, 2005, the Plaintiff earned an hourly wage of $23.00, with time-and-a-half paid for fifteen overtime hours worked during that particular pay period. (Pl. L.R. 7056-1 Stmt., Ex. A to Ex. 1.)

Ex. A, ¶¶ 16, 20; Def. L.R. 7056-2 Resp. Add'l Facts ¶¶ 59, 61.)

Additionally, throughout his employment at Northwestern Plating, the Plaintiff

participated in the company's profit-sharing pension plan (the "Plan"), which the parties do not

dispute was subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §

1001 *et seq.* (Def. L.R. 7056-2 Resp. ¶ 26.) The Plan was funded by contributions from

employees' paychecks, as well as contributions from the company. (Pl. L.R. 7056-1 Stmt., Ex. 5,

¶ 6b.) Additional funding came from tax-deferred income from the Plan's investments. (*Id.*)

The Plaintiff contributed portions of his paycheck to the Plan throughout his years at

Northwestern Plating, although there is no evidence in the record that he did so during the

Defendant's ownership of the company. (*See id.*, Exs. B & C to Ex. 1; Def. L.R. 7056-2 Resp.,

Ex. A, ¶ 8.) According to a Plan statement for the period April 1, 1999 to March 31, 2000, the

Plaintiff's total account balance as of the latter date was $240,209.70, and the Plaintiff was fully

vested in the Plan. (Pl. L.R. 7056-1 Stmt., Ex. B to Ex. 1; *see also* Def. L.R. 7056-2 Resp. ¶¶ 28,

29. 30.) The statement also notes that "100% of your Account balance will be paid upon

termination due to death, disability or retirement" and that "[y]ou will receive the vested account

balance shown on th[e] statement in the event of termination of employment for any other

reason." (Pl. L.R. 7056-1 Stmt., Ex. B to Ex. 1.)

The Defendant administered the Plan from September 2001 through March 2005. (*Id.*,

Ex. 5, ¶ 6b.) He was the sole trustee for the Plan, as well as the only member of the committee

acting as the fiduciary for the Plan. (*Id.*; Def. L.R. 7056-2 Resp. ¶¶ 27, 30.) The Defendant

maintained custody of the Plan's funds through an account at Morgan Stanley and had sole

signatory authority over that account. (Pl. L.R. 7056-1 Stmt., Ex. 5, ¶ 6b.)

8

Beginning on September 27, 2001 and continuing through March 11, 2005, the Defendant withdrew money from the Plan and deposited it into his personal bank account at Northern Trust. (*Id.*) He wrote forty-nine checks from the Plan's account ranging in amount from $5,000 to $60,000 and totaling $832,890. (*Id.*) According to the Defendant, he used the money from those checks to pay both personal expenses and the operating expenses of the company.[3] (Def. L.R. 7056-2 Resp. Add'l Facts ¶ 49; Pl. L.R. 7056-1 Stmt., Ex. 5, ¶ 6b.)   In his answer to the complaint in this adversary proceeding, the Defendant admitted that he "without permission or authority illegally withdrew funds from the pension plan belonging to [the Plaintiff]" and that he "without authority or consent, willfully and unlawfully converted money from the pension fund." (Def. L.R. 7056-2 Resp. ¶¶ 31, 32.)

In early 2005, Northwestern Plating began to face "extreme financial difficulty." (Def. L.R. 7056-2 Resp. Add'l Facts ¶¶ 50,[4] 51.) The company failed to pay its federal tax obligation (*id.* ¶ 50) and was unable to maintain the premiums on its group health insurance policy (Def. L.R. 7056-2 Resp. ¶ 21; Pl. Resp. to Def. L.R. 7056-2 Resp. Add'l Facts ¶ 51). Despite the fact that the health insurance policy lapsed in February 2005, the amount of $11.70 continued to be deducted from each of the Plaintiff's paychecks through July 2005. (Def. L.R. 7056-2 Resp. ¶¶ 21, 22; Def. L.R. 7056-2 Resp. Add'l Facts ¶ 51; Pl. L.R. 7056-1 Stmt., Ex. 1, ¶ 6.)   The Defendant never told the Plaintiff that his health insurance had lapsed. (Def. L.R. 7056-2 Resp. ¶ 23.)

---

[3] The Plaintiff admits in his response to the Defendant's additional material facts only that the Defendant used the money to pay personal expenses. (Pl. Resp. to Def. 7056-2 Resp. Add'l Facts ¶ 49.)

[4] The paragraph referenced here is the second one numbered 50.

Throughout the period February 24, 2005 through August 2, 2005, the Plaintiff was issued eleven employee paychecks that were not honored by the Defendant's bank because there were insufficient funds to cover the checks. (Pl. L.R. 7056-1 Stmt. ¶ 11.)  The Defendant admits that he signed each of the eleven checks. (Def. L.R. 7056-2 Resp. ¶ 14; *see also* Pl. Resp. to Def. L.R. 7056-2 Resp. Add'l Facts ¶ 55.)  As a result of these checks being returned unpaid, the Plaintiff incurred bank charges in the amount of $78. (Pl. L.R. 7056-1 Stmt. ¶ 13.)  The Plaintiff notified the Defendant each time a check was returned for insufficient funds. (Def. L.R. 7056-2 Resp. ¶ 15.)  Although the Defendant, in turn, promised to issue new checks to the Plaintiff to replace those that had not been honored, he failed to do so. (Pl. L.R. 7056-1 Stmt. ¶¶ 12, 16.)  The Plaintiff continued working at Northwestern Plating based on the Defendant's representations that he would reissue the paychecks.[5]  (*Id.* ¶¶ 17, 38.)

During Northwestern Plating's "final months" of operation, the Internal Revenue Service (the "IRS") seized the company's bank accounts and began to place liens on its payables. (Def. L.R. 7056-2 Resp. Add'l Facts ¶ 53.)  On several occasions, the IRS seized Northwestern Plating's funds after checks had been issued, and the company operating account did not have enough funds to cover the checks. (*Id.* ¶ 54.)  Also during those final months, Northwestern Plating shut down production for at least one day a week, and there were weeks when production ceased altogether because of unpaid utility bills. (*Id.* ¶ 57.)

---

[5] The Defendant denies each statement of fact regarding the eleven checks in paragraphs 11, 12, 13, 16, 17, and 18, supporting each denial by stating the following: "At no time did I ever personally issue paychecks to [Northwestern Plating] employees, nor did I ever guarantee the payment of any [Northwestern Plating] checks that were returned ... [for insufficient funds] to [the Plaintiff] or any other entity." (Def. L.R. 7056-2 Resp., Ex. A, ¶ 17.) This statement does not offer evidentiary support for the Defendant's denials. Thus, as discussed *supra*, the Plaintiff's statements of fact in the paragraphs noted above are deemed admitted.

On August 2, 2005, the Plaintiff was given notice that the plant was closing and that all employees were to be laid off. (Pl. L.R. 7056-1 Stmt., Ex. 1, ¶ 3.) All business operations ceased in August 2005. (Def. L.R. 7056-2 Resp. Add'l Facts ¶ 58.)

Subsequently, the Plaintiff filed suit against both Northwestern Plating and the Defendant in the Circuit Court of Cook County, Illinois. (*See* Def. L.R. 7056-2 Resp. ¶ 35.) On January 4, 2006, the circuit court entered a default judgment order in favor of the Plaintiff. (Pl. L.R. 7056-1 Stmt., Ex. 6.) That order awarded the Plaintiff $278,876.90 in actual damages and legal fees, as well as $275,000 in punitive damages. (*Id.*; Def. L.R. 7056-2 Resp. ¶ 35.) The actual damages award was based on, *inter alia*, fraud and conversion. (Def. L.R. 7056-2 Resp. ¶ 35.) According to the Plaintiff, the actual damages consist of $15,084 in unpaid wages; $20,175 in earned, unused vacation; $330 in money deducted from the Plaintiff's paychecks for health insurance which was not provided; $78 in bank charges accrued by the Plaintiff for the eleven checks not honored by the bank; and $240,209.70 in funds from the Plan in which the Plaintiff was fully vested. (Pl. L.R. 7056-1 Stmt. ¶ 36.) Legal fees totaled $3,000.20. (*See id.*) Post-judgment interest at the rate of 9% per year has been accruing since January 4, 2006. (Def. L.R. 7056-2 Resp. ¶ 37.)

In April 2006, the United States Department of Justice seized all of Northwestern Plating's corporate records. (Pl. Resp. to Def. L.R. 7056-2 Resp. Add'l Facts ¶ 45.) Those records have not been returned. (*Id.*) On May 1, 2006, Northwestern Plating was dissolved. (*Id.* ¶ 43.) The Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on July 31, 2007. (Def. L.R. 7056-2 Resp. ¶ 3.) Approximately two months later, on October 5,

2007, the Plaintiff filed an adversary proceeding in the bankruptcy case.[6]

On January 14, 2008, the United States Secretary of Labor (the "Secretary") initiated an adversary proceeding, alleging defalcation by diversion of Plan assets in violation of ERISA and seeking a dischargeability determination. (Def. L.R. 7056-2 Resp., Ex. B, p. 3.)  The Secretary contended that the Defendant owes the Plan $1,269,509.18, which includes $416,509.18 in opportunity costs. (*Id.* at pp. 3-4.)  On June 8, 2009, the Secretary and the Defendant formally stipulated that the debt of $882,890.84, including $50,000 in opportunity costs, is nondischargeable. (*Id.* at p. 4.)  Thereafter, on June 10, 2009, this court entered a consent judgment and order finding that the debt in the amount stipulated, owed to Northwestern Plating's Plan, is excepted from discharge. (*Id.* at pp. 1-2; Def. L.R. 7056-2 Resp. Add'l Facts ¶ 68.)

In addition to the circuit court default judgment and the bankruptcy court consent judgment, the Defendant was charged by the United States Attorney for the Northern District of Illinois with, among other things, "embezzling and stealing funds to which [he] was not entitled from an employee pension benefit plan" in violation of 18 U.S.C. § 664.[7] (Pl. L.R. 7056-1 Stmt.,

---

[6] The court laid out the full procedural background in its prior memorandum opinion in this case (the "prior Memorandum Opinion") and will not do so again here. *See Zamora v. Jacobs (In re Jacobs)*, 403 B.R. 565, 569-70 (Bankr. N.D. Ill. 2009).

[7] Section 664 provides, in pertinent part, as follows:

> Any person who embezzles, steals, or unlawfully and willingly abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

Ex. 5, ¶ 2; *see also* Def. L.R. 7056-2 Resp. ¶ 33.) On March 5, 2008, the Defendant entered into

a plea agreement with the U.S. Attorney in which he admitted to that federal charge, as well as to

the facts stated in the prosecution's version of the offense.[8] (Pl. L.R. 7056-1 Stmt., Ex. 5, ¶ 5;

Def. L.R. 7056-2 Resp. ¶ 34.) For his crimes, he was convicted and is currently incarcerated at

the Federal Prison Camp in Terre Haute, Indiana. (Def. L.R. 7056-2 Resp. Add'l Facts ¶ 42.)

After the Defendant's motion to dismiss the Plaintiff's second amended complaint was

granted in part and denied in part by this court on April 9, 2009, *see Zamora v. Jacobs (In re

Jacobs)*, 403 B.R. 565 (Bankr. N.D. Ill. 2009), the Plaintiff filed the instant motion for summary

judgment on January 27, 2010. The motion has been fully briefed and is now ready for ruling.

## IV. DISCUSSION

### A. Preliminary Issues

Before addressing the statutory provisions under which the Plaintiff argues that the debt

owed to him by the Defendant must be excepted from discharge, the court discusses two

threshold issues regarding the party against whom the Plaintiff's allegations lie and the

preclusive effect of the circuit court judgment.

### 1. The Party Against Whom the Plaintiff's Allegations Lie

First, the Defendant suggests that the Plaintiff's allegations lie if at all against

---

18 U.S.C. § 664.

[8] The two-count plea agreement also charged the Defendant with "storing and disposing of hazardous waste at a facility lacking a proper permit, in violation of Title 42, United States Code, Section 6928(d)(2)(A)[.]" (Pl. L.R.. 7056-1 Stmt., Ex. 5, ¶ 2.) The Defendant admitted to that federal charge as well. (*Id.* ¶ 5.)

Northwestern Plating and not against the Defendant personally.  Specifically, for many of the

statements of fact alleged by the Plaintiff, the Defendant denies each paragraph based solely on

the Plaintiff's contention that it was the Defendant, rather than Northwestern Plating, who acted

or failed to act in a particular manner.  For example, the Defendant denies the facts in paragraph

11, in their entirety, because the Plaintiff alleges that it was the Defendant who issued the

Plaintiff the paychecks that were not honored by the Defendant's bank.  (*See* Def. L.R. 7056-2

Resp. ¶ 11.)  In support of his denial, the Defendant states: "At no time did I ever personally

issue paychecks to [Northwestern Plating] employees . . . ."  (*Id.*, Ex. A, ¶ 17.)  Similarly, in

paragraph 22, what the Defendant denies is that it was he, himself, who made the deductions for

the health insurance from the Plaintiff's paychecks through July 2005–not that those deductions

were made.  (*Id.* ¶ 22.)

 The court rejects the Defendant's argument.  It is well established that corporate officers

who actively participate in the commission of fraudulent or tortious conduct may be held

personally liable.  *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693

(Bankr. N.D. Ill. 2001); *see also Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988); *Lobato v.*

*Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408-09 (10th Cir. 1958); *Bell Auto Leasing, Inc. v.*

*Farbman (In re Farbman)*, 244 B.R. 135, 141 (Bankr. N.D. Ill. 2000) (*citing Eggert*); *McMillan*

*v. Firestone (In re Firestone)*, 26 B.R. 706, 714 (Bankr. S.D. Fla. 1982).

 Further, corporate officers may not be shielded by the corporate form from liability under

the Illinois Wage Payment and Collection Act (the "Act"), 820 ILCS 115/1 *et seq.* (West 2008).

Applicable to all employers and employees in the state of Illinois, 820 ILCS 115,1, the Act

ensures that employees receive all earned benefits upon leaving their employer without

retaliation from those employers, *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 799 (N.D. Ill. 2010).

Section 2 of the Act provides that the term "employer" means "any individual, partnership,

association, [or] corporation . . . where wage payments are made . . ., or any person or group of

persons acting directly or indirectly in the interest of an employer in relation to an employee, for

which one or more persons is gainfully employed." 820 ILCS 115/2. The Act also states that

"any officers of a corporation . . . who knowingly permit such employer to violate the provisions

of th[e] Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS

115/13. For purposes of the Act, "knowingly" means "knowledge of the existence of facts

constituting the alleged violation," not "knowledge of the unlawfulness of the act or omission."

Ill. Admin. Code tit. 56, § 300.620 (1992). A corporate officer may be personally liable under

section 13 of the Act for wages or final compensation if the officer "actively asserted substantial

control over the management and financial affairs of the corporation . . .." *Id.*

As set forth *supra*, the Defendant was the president, sole shareholder, and operator of

Northwestern Plating. It is undisputed that it was the Defendant who handled the daily affairs of

the company and was responsible for ensuring that its employees were paid. Further, the parties

do not contest that the Defendant was the signatory on the corporate bank account, signed

employee paychecks, served as the sole trustee for the Plan, and maintained custody of the Plan's

funds. As he clearly asserted "substantial control over the management and financial affairs" of

Northwestern Plating, the Defendant may be personally liable under the Act, and his claims that

the company is to blame are without merit.

### 2. Collateral Estoppel

Next, although not explicitly stated as such, it is apparently the Plaintiff's position that

15

the prior circuit court judgment must be given preclusive effect in this adversary proceeding

under the doctrine of collateral estoppel.   The United States Supreme Court has held that

collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S.

279, 284 n.11 (1991); *see also Meyer v. Rigdon*, 36 F.3d 1375, 1378-79 (7th Cir. 1994).   The

party asserting collateral estoppel bears the burden of establishing its applicability. *Freeman*

*United Coal Mining Co. v. Office of Workers' Comp. Program*, 20 F.3d 289, 294 (7th Cir. 1994).

Under Illinois law, collateral estoppel may be applied if:  (1) the issue decided in the prior

action is identical to the issue in the current proceeding; (2) the party against whom the estoppel

is asserted was a party to, or in privity with a party to, the prior action; and (3) a final judgment

on the merits was reached in the prior action. *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 478

(Ill. 2001); *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849

(Ill. 2001).   Collateral estoppel applies, however, only to a "point or question *actually litigated*

and determined." *Hous. Auth. for La Salle Cnty. v. Y.M.C.A.*, 101 Ill. 2d 246, 252 (1984)

(emphasis in original) (internal quotation omitted).   "Actually litigated" means "that the parties

disputed the issue and the trier of fact resolved it." *Taylor v. Peoples Gas Light & Coke Co.*, 275

Ill. App. 3d 655, 663 (1st Dist. 1995).

"Detailed findings of fact from the earlier proceeding are necessary to enable the

bankruptcy court to determine which issues were actually litigated in the earlier proceeding."

*Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 218 (Bankr. N.D. Ill. 1993).

"In order for a previous judgment to be conclusive, it must appear clearly and certainly that the

identical and precise issue was decided in the previous action.  The party asserting the preclusion

bears the burden of showing with clarity and certainty what was determined by the prior

16

judgment. This is a heavy burden of proof." *Benton v. Smith*, 510 N.E.2d 952, 956 (Ill. App. Ct.

1987) (internal citations omitted).

Here, the Plaintiff has not met his burden of establishing the applicability of collateral

estoppel. This court was furnished with only a copy of the judgment order, not a transcript of the

evidence offered in those proceedings. The order provides, in substantive part, as follows:

1. An order of default is entered against Defendant Northwestern Plating Works, Inc. a/k/a David J. Jacobs, Inc[.] for failing to have appeared before this court, and for failing to have filed either an appearance or answer.

2. After hearing evidence for a prove up against both Defendants, a judgment is hereby entered against both Defendants, Defendant Northwestern Plating Works, Inc[.], a/k/a David J. Jacobs, Inc. and against David J. Jacobs, jointly and severally, and in favor of the Plaintiff Juan Zamora in the **total amount of $553,976.90**, plus costs.

3. The joint and several judgement as to both Defendants in the amount of $553,976.90 is calculated as follows:

   a. $278,876.90 in actual damages and legal fees, and

   b. $275,000 in punitive damages. This court expressly finds sufficient evidence of malice to warrant an entry of punitive damages as to both Defendants, jointly and severally.

4. This is a final judgement and there is no just reason to delay the appeal or enforcement of this judgement.

(Pl. L.R. 7056-1 Stmt., Ex. 6 (emphasis in original).) Absent factual findings or an explanation

of the circuit court's reasoning, the factual and legal bases of the order are both unknown and

indeterminate. "Detailed findings of fact from the earlier proceeding are necessary to enable the

bankruptcy court in the subsequent adversary proceeding to determine which facts were actually

proven, which issues were decided, and what was essential to the other court's judgment."

*Guardado v. Bozovic (In re Bozovic)*, Nos. 03 B 28675, 04 A 00160, 2004 WL 1905355, at *6

(Bankr. N.D. Ill. Aug. 24, 2004). Without a sufficient showing of the evidence that was

submitted in the earlier action, or detailed findings of fact or conclusions of law from that action,

the court is not able to determine which issues were actually litigated in the circuit court

proceeding. Although the United States Supreme Court has held that punitive damages, in

particular, are nondischargeable, *Cohen v. de la Cruz*, 523 U.S. 213, 220-22 (1998), and the

circuit court made an explicit finding of malice with regard to the entry of those damages, the

order provides no factual information whatsoever and, in fact, does not expressly rule on any of

the issues in the instant adversary proceeding. Thus, the circuit court's judgment of punitive

damages is not entitled to preclusive effect, and, accordingly, those damages are not included in

the debt excepted from discharge in this adversary proceeding.

Moreover, the judgment entered by the circuit court is a default judgment. Illinois

subscribes to the majority view that a default judgment cannot form the basis for collateral

estoppel. *Clear Channel Outdoor, Inc. v. Nikitas (In re Nikitas)*, 326 B.R. 127, 131 (Bankr. N.D.

Ill. 2005) (*citing In re Catt*, 368 F.3d 789, 791 (7th Cir. 2004)). "This is so because by definition

nothing is 'actually litigated' when a default is entered[.]" *Id.* The defendant loses not on the

merits of the case itself but because he has failed to defend. *Id.*

For these reasons, the circuit court judgment order by itself cannot serve as a basis to

except the Plaintiff's debt from discharge under section 523(a), and the court cannot give

preclusive effect to that judgment order.

### B. The Dischargeability of Debt Under Section 523(a)

The court now turns to the statutory exceptions to discharge under section 523(a) of the

18

Bankruptcy Code that have been invoked by the Plaintiff. The discharge provided by the Code is meant to effectuate the "fresh start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). As the party seeking to establish an exception to the discharge of a debt, the Plaintiff bears the burden of proof. *See Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 957 (Bankr. N.D. Ill. 1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan*, 498 U.S. at 291; *see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). Exceptions to discharge are to be construed strictly against the Plaintiff and liberally in favor of the Defendant. *See In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998). Section 523(a) is "narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Paul*, 266 B.R. at 693.

### 1. Section 523(a)(2)(A)

Section 523(a)(2)(A) of the Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). Three separate grounds for dischargeability are included under section 523(a)(2)(A): false pretenses, false representation, and actual fraud. *Id.*

To except a debt from discharge based on false pretenses or false representation, a creditor must establish that: (1) the debtor made a false representation of fact, a representation

19

(2) which the debtor (a) either knew was false or made with reckless disregard for its truth and

(b) made with an intent to deceive, (3) upon which the creditor justifiably relied. *Ojeda v.*

*Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997);

*Citibank (S.D.), N.A. v. Michel*, 220 B.R. 603, 605 (N.D. Ill. 1998); *Deady v. Hanson (In re*

*Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010); *Baermann v. Ryan (In re Ryan)*, 408 B.R.

143, 156 (Bankr. N.D. Ill. 2009).

Under section 523(a)(2)(A), a false representation is an express misrepresentation that

can be demonstrated either by a spoken or written statement or through conduct. *New Austin*

*Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez)*, 277 B.R. 904, 908 (Bankr. N.D. Ill.

2002); *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002).

Additionally, "[a] debtor's silence regarding a material fact can constitute a false representation

under [section] 523(a)(2)(A)." *Hanson*, 432 B.R. at 772 (internal quotation omitted).

In contrast, false pretenses include "implied misrepresentations or conduct intended to

create and foster a false impression." *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927

(Bankr. N.D. Ill. 1996) (internal quotation omitted). As above, "omissions or a failure to

disclose on the part of the debtor can constitute misrepresentations where the circumstances are

such that omissions or failure to disclose create a false impression which is known by the

debtor." *Id.* at 928. The court has defined false pretenses as follows:

> [A] series of events, activities or communications which, when
> considered collectively, create a false and misleading set of
> circumstances, or false and misleading understanding of a
> transaction, in which a creditor is wrongfully induced by the debtor
> to transfer property or extend credit to the debtor....
>
> A false pretense is usually, but not always, the product of multiple

> events, acts or representations undertaken by a debtor which
> purposely create a contrived and misleading understanding of a
> transaction that, in turn, wrongfully induces the creditor to extend
> credit to the debtor. A "false pretense" is established or fostered
> willfully, knowingly and by design; it is not the result of
> inadvertence.

*Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (*quoting Evans v.*

*Dunston (In re Dunston)*, 117 B.R. 632, 641 (Bankr. D. Colo. 1990), *aff'd in part, rev'd in part*,

146 B.R. 269 (D. Colo. 1992)); *see also John Deere Co. v. Broholm (In re Broholm)*, 310 B.R.

864, 872 (Bankr. N.D. Ill. 2004) (*quoting Paneras*).

Unlike false pretenses and false representation, "actual fraud" requires neither a

misrepresentation nor reliance. *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000).

Encompassing a broad spectrum of circumstances, it consists of "any deceit, artifice, trick, or

design involving direct and active operation of the mind, used to circumvent and cheat

another[.]" *Id.* at 893 (internal quotation omitted). In order to establish a claim based on "actual

fraud," a creditor must prove that: (1) "actual fraud" occurred; (2) the debtor intended to defraud

the creditor; and (3) the debtor's actual fraud created the debt at issue. *Bletnitsky v. Jairath (In re*

*Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

Scienter is a required element of any cause of action under section 523(a)(2)(A). *Ryan*,

408 B.R. at 157-58. For purposes of the false pretenses and false representation prongs of the

statutory exception, intent to deceive is measured by the debtor's subjective intention at the time

the representation was made. *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr. N.D. Ill.

1998). Similarly, the focus of an "actual fraud" claim is on the defendant's state of mind at the

time of his purportedly fraudulent conduct. *Taylor v. Demopoulos (In re Demopoulos)*, Nos. 07-

71355, 07-96062, 2008 WL 4489153, at *11 (Bankr. N.D. Ill. Sept. 23, 2008). Accordingly,

subsequent representations or acts do not establish that the debtor had the requisite intent at the

time the representation was made or the act was carried out. *Ryan*, 408 B.R. at 158. However,

courts may consider subsequent conduct to the extent that such conduct provides an indication of

the debtor's state of mind at the time of the actionable representations or acts. *6050 Grant, LLC*

*v. Hanson (In re Hanson)*, 437 B.R. 322, 327-28 (Bankr. N.D. Ill. 2010) (collecting cases).

Because direct proof of intent is rarely available, scienter may be established through

circumstantial evidence. *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996).

Thus, where the debtor knowingly or recklessly made false representations that he knew or

should have known would induce another to act, the court can infer an intent to deceive. *Hickory*

*Point Bank & Trust, FSB v. Kucera (In re Kucera)*, 373 B.R. 878, 884 (Bankr. C.D. Ill. 2007);

*Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). In the

same way, fraud may be inferred if the totality of the circumstances suggests that the debtor

intended to cheat or otherwise deceive the creditor. *Ryan*, 408 B.R. at 157.

Finally, reliance on a false pretense or false representation under section 523(a)(2)(A)

must be "justifiable." *Field v. Mans*, 516 U.S. 59, 73-75 (1995). Justifiable reliance is

subjective; what is justifiable depends on the characteristics of the particular plaintiff and the

circumstances of the particular case. *Id.* at 71; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*,

278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). The requirement that reliance be justifiable imposes

no affirmative duty to investigate unless "the falsity of the representation is easily detectable,"

*Dobek*, 278 B.R. at 508, but a creditor cannot bury his head in the sand and ignore obvious

falsehoods, *Jairath*, 259 B.R. at 315.

The Plaintiff here claims that the Defendant made a number of specific "misrepresentations" for purposes of section 523(a)(2)(A). First, the Plaintiff suggests that the Defendant's very issuance of the eleven checks was a misrepresentation because he issued those checks with "a total and reckless disregard" as to whether there was money in the account to cover them. (Pl. Mem. in Supp. of Mot. for Summ. J., pp. 7-8.) Second, the Plaintiff alleges that the Defendant repeatedly promised to issue new checks to replace the ones that were not honored by the bank. (Pl. L.R. 7056-1 Stmt. ¶¶ 12, 16, 17.) Third, the Plaintiff says, the Defendant represented in July 2005 that he would either give the Plaintiff the monies he had vested in the Plan or provide him with the information needed to obtain such monies if the Plaintiff agreed to continue to work for the company. (*Id.* ¶ 19.) Fourth, the Plaintiff contends that the Defendant never told him that the group health insurance had lapsed. (*Id.* ¶ 23.) Finally, the Plaintiff maintains that when he asked the Defendant in the spring of 2005 if all of the health insurance premiums had been paid, the Defendant told him that "all payments were made and there should be no problems." (*Id.* ¶ 24.)

As the court noted in its prior Memorandum Opinion, the mere issuance of a check that is subsequently returned for insufficient funds does not constitute a misrepresentation under section 523(a)(2)(A). *Williams v. United States*, 458 U.S. 279, 284 (1982) (finding that, "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or false'"); *Scarlata*, 979 F.2d at 525; *Paul*, 266 B.R. at 694; *Bryson*, 187 B.R. at 959-60 (finding that the issuance of nine checks later returned for insufficient funds did not constitute a false pretense or false representation for purposes of section 523(a)(2)(A)). Thus, the Defendant's

23

issuance of the eleven checks in dispute does not satisfy the misrepresentation element of the

statutory exception.

The statements in the Plaintiff's second and fourth contentions, however, succeed in

meeting the misrepresentation element required by section 523(a)(2)(A). Although the

Defendant denied the Plaintiff's allegations that he said he would issue new checks to replace

those that were returned unpaid, the Defendant stated in support of that denial: "At no time did I

ever personally issue paychecks to [Northwestern Plating] employees, nor did I ever guarantee

the payment of any [Northwestern Plating] checks that were returned ... [for insufficient funds] to

[the Plaintiff] or any other entity." (Def. L.R. 7056-2 Resp., Ex. A, ¶ 17.) As discussed *supra*,

this assertion does not offer evidentiary support for the Defendant's denial. Thus, the Plaintiff's

statements of fact about the Defendant's promises to reissue the checks are deemed admitted, and

those promises constitute misrepresentations under section 523(a)(2)(A). Additionally, the

Defendant's failure to tell the Plaintiff that his health insurance had lapsed satisfies the statutory

exception's misrepresentation requirement. *See Hanson*, 432 B.R. at 772 (finding that a debtor's

silence with respect to a material fact can constitute a misrepresentation under section

523(a)(2)(A)).

As for the Plaintiff's other allegations–that the Defendant represented in July 2005 that he

would enable the Plaintiff to obtain the monies he had vested in the Plan and that he told the

Plaintiff in spring of 2005 that all of the health insurance premiums had been paid–the Defendant

cites to paragraphs in his affidavit to support his denials of these statements. Without additional,

evidentiary support for the denials, the court is hesitant to find that genuine issues of material fact

remain as to those statements. *See United States v. Torres*, 142 F.3d 962, 968 (7th Cir. 1998)

("'Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.'").

Regarding the scienter element specifically in connection with that part of the debt arising from unpaid wages, the Defendant argues that the Plaintiff has failed to set forth sufficient facts to establish that the Defendant intended to cheat the Plaintiff by telling him that he would provide new checks for those that did not clear. According to the Defendant, it was "possible" that his statements about reissuing the checks were true when made, and the fact that those checks were never replaced does not show intent. (*See* Def. Mem. in Opp'n to Pl. Mot. for Summ. J., p. 5.) Rather, the Defendant maintains that he did not intend to write bad checks and that the checks were not honored because of the IRS's levy of Northwestern Plating's bank accounts.

The court rejects the Defendant's argument. The knowledge requirement for exception to discharge is met if the debtor's representation was known to be false or recklessly made without knowing whether it was true or false. *See Ojeda*, 599 F.3d at 716-17. Where the knowledge element is based on recklessness, the conduct must rise to the level of reckless disregard for the truth. *Visotsky v. Woolley (In re Woolley)*, 145 B.R. 830, 834 (Bankr. E.D. Va. 1991) (finding that reckless conduct is typically attended by a conscious indifference to the consequences and is frequently demonstrated by a pattern of conduct). "Reckless conduct refers to unreasonable conduct in disregard of a known or obvious risk from which it is highly probable that harm [will] follow." *Id.* As for intent, "[w]here a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315. A court can also infer

25

intent by relying on a pattern of representations. *Hanson*, 437 B.R. at 328.

In this matter, eleven checks, each signed by the Defendant, were issued to the Plaintiff over a five-month period of time. The Plaintiff notified the Defendant each time these checks were returned for insufficient funds, and each time the Defendant represented that he would issue a new check to replace the one that had not been honored. At least some of these representations were made at or around the time that Northwestern Plating was experiencing what the Defendant describes as "extreme financial difficulty."[9] The company was unable to pay its federal tax obligations; the IRS was placing liens on its payables; utility bills were going unpaid; and production was being shut down. The Defendant's representations that he would reissue the eleven checks were made willfully, knowingly, by design, and with a reckless disregard for the truth in an attempt to keep the Plaintiff from leaving the company's employ. That Northwestern Plating was facing financial deterioration at the time the Defendant made the misrepresentations is relevant to his intent. *See, e.g., Hanson*, 437 B.R. at 329 (finding that the financial deterioration of the debtor's company was germane in determining his intent).

In reliance on the Defendant's representations that he would replace the eleven checks that had been returned unpaid, the Plaintiff continued working at the company. Although Northwestern Plating began facing financial difficulty early in that year, there is no evidence of record that the Plaintiff was aware of the fiscal problems or the impending collapse of the company. Thus, the falsity of the representations was not readily apparent to the Plaintiff, and he

---

[9] Although the time line is a bit unclear, the Defendant admits that the "extreme financial difficulty" being faced by Northwestern Plating began in "early 2005." (Def. L.R. 7056-2 Resp. Add'l Facts ¶¶ 50, 51.) The checks in dispute were issued over the period February 24, 2005 through August 2, 2005. (Pl. L.R. 7056-1 Stmt. ¶ 11.)

had no affirmative duty to investigate. *See Dobek*, 278 B.R. at 508.

The series of representations about the reissuance of the paychecks, considered collectively, creates a false and misleading set of circumstances, in which the Plaintiff was wrongfully induced by the Defendant to continue to work at the company. Based on the foregoing, the Plaintiff has established that there is no genuine issue of material fact as to the debt owed to him for unpaid wages and that he is entitled to judgment as a matter of law under the false representation and false pretenses prongs of section 523(a)(2)(A).

The portion of the debt arising from the unpaid wages, insurance deductions, and withdrawn Plan funds is also nondischargeable under the fraud prong of the statutory exception. Viewing the circumstances in the aggregate, all of the pertinent facts portray "a picture of deceptive conduct" by the Defendant, indicating an intent to defraud the Plaintiff. *See Hanson*, 437 B.R. at 330; *Cripe v. Mathis (In re Mathis)*, 360 B.R. 663, 666 (Bankr. C.D. Ill. 2006); *Shelby Shore Drugs, Inc. v. Sielschott (In re Sielschott)*, 332 B.R. 570, 572 (Bankr. C.D. Ill. 2005). Despite the Defendant's denials about representations made to the Plaintiff about payment of the health insurance premiums and information allowing the Plaintiff to obtain the money he had vested in the Plan, the undisputed facts establish that: (1) the Defendant stated on eleven separate occasions that he would reissue checks to replace those that were not honored; (2) the checks were never reissued; (3) deductions were taken from the Plaintiff's paychecks to cover his portion of the group health insurance policy for about six months after that policy had lapsed; (4) the Defendant failed to disclose to the Plaintiff that the policy had lapsed; and (5) the Defendant, over a three-and-a-half year period, without permission or authority, withdrew over $800,000 from the Plan to pay either his own personal expenses or both his personal expenses

27

and the operating expenses of the company.  Based on the totality of the circumstances, the

existence of fraud under section 523(a)(2)(A) may be inferred.  *See Mathis*, 360 B.R. at 666;

*Sielschott*, 332 B.R. at 572.

As for the $20,175 that the Plaintiff seeks for earned but unused vacation time, the

Defendant denies that the Plaintiff had fourteen weeks of such vacation or that he was allowed to

accumulate vacation time at all.  In support of those denials, the Defendant states that all

employee benefits, including any accrued vacation time, "ceased" at the time Northwestern

Plating laid off its employees and that "company policy" did not allow for the banking of unused

vacation time.  (Def. L.R. 7056-2 Resp., Ex. A, ¶¶ 16, 20.)  The Defendant fails to provide the

court with either the written company policy itself or any other evidence to support these naked

assertions.

Moreover, the Wage Payment and Collection Act mandates that all accrued but unused

vacation time be paid to any employee who has resigned or is terminated.  820 ILCS 115/5.

Specifically, section 5 provides, in pertinent part, as follows:

> Every employer shall pay the final compensation of separated employees in
> full, at the time of separation, if possible, but in no case later than the next
> regularly scheduled payday for such employee. . . .
>
> Unless otherwise provided in a collective bargaining agreement, whenever a
> contract of employment or employment policy provides for paid vacations,
> and an employee resigns or is terminated without having taken all vacation
> time earned in accordance with such contract of employment or employment
> policy, the monetary equivalent of all earned vacation shall be paid to him or
> her as part of his or her final compensation at his or her final rate of pay and
> no employment contract or employment policy shall provide for forfeiture of
> earned vacation time upon separation.

*Id.*  As noted above, the court has not been provided with Northwestern Plating's employment

28

policy, and there is nothing in the record to suggest that the company's employees were subject

to a collective bargaining agreement. Although section 5 of the Act does not define the terms

"separated" and "terminated," the parties do not dispute that the Plaintiff, as well as all of

Northwestern Plating's other employees, was laid off or generally separated from the company in

August 2005, and the Defendant does not deny that the company provided for paid vacations.

Additionally, the Defendant provides no evidentiary support for his denial that the Plaintiff

accrued fourteen weeks of earned, unused vacation time. Thus, as a matter of law, the Defendant

must pay the Plaintiff the monetary equivalent of fourteen weeks of vacation pursuant to section

5 of the Act, and no employment policy may provide for forfeiture of that vacation time. At the

Plaintiff's final rate of pay of $23 per hour, and assuming a forty-hour workweek, the total for

unused vacation time amounts to $12,880.

Finally, the court finds that the legal fees of $3,000.20 are also nondischargeable. Section

523 does not expressly provide for the recovery of attorney's fees by creditors who are successful

in dischargeability proceedings. *Pierce v. Pyritz*, 200 B.R. 203, 205 (N.D. Ill. 1996). The United

States Supreme Court has held, however, that the statute is "best read to prohibit the discharge of

*any* liability," including attorney's fees, resulting from the proscribed conduct. *Cohen*, 523 U.S.

220-21 (emphasis added); *see also Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987)

(finding that "[a]ncillary obligations such as attorneys' fees and interest may attach to the

primary debt; consequently, their status depends on that of the primary debt"). Because the

Plaintiff's debt is nondischargeable under section 523(a)(2)(A), as well as sections 523(a)(4) and

523(a)(6), *see infra,* the legal fees associated therewith are also nondischargeable.

In sum, the undisputed facts paint a picture of deceptive or fraudulent conduct by the

29

Defendant that indicates an intent to deceive the Plaintiff. Accordingly, the court grants summary judgment in the Plaintiff's favor and enters judgment that the debt of $271,581.90, plus interest of 9% per year which has been accruing since January 4, 2006, is nondischargeable under section 523(a)(2)(A).[10]

## 2. Section 523(a)(4)

Section 523(a)(4) provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The meaning of the terms in this provision of the Code is a question of federal law. *Hanson*, 432 B.R. at 773-74; *Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 754 (Bankr. N.D. Ill. 2010). In order for the Plaintiff to prevail under section 523(a)(4), he must show that the Defendant committed: (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. 11 U.S.C. § 523(a)(4). The Plaintiff invokes only the embezzlement and the fraud or defalcation prongs of the statutory exception.

For purposes of section 523(a)(4), embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (internal quotation omitted). To

---

[10] The debt of $271,581.90 consists of the following: $78 in bank fees incurred by the Plaintiff for the return of the eleven checks; $15,084 in unpaid wages; $12,880 in earned, unused vacation; $330 in money deducted from the Plaintiff's paychecks for health insurance not provided by the Defendant; $240,209.70 in funds from the Plan in which the Plaintiff was fully vested; and $3,000.20 in legal fees. Although there is no detailed evidence of record regarding the precise amounts for the unpaid wages, the health insurance deductions, or the legal fees, the Defendant notes only that "[n]o sufficient factual basis exists" for the figures provided by the Plaintiff. (Def. L.R. 7056-2 Resp. ¶ 36.) Moreover, the Defendant admits that "[a]ll documents supporting" the denials involving corporate records "were seized, and based on information and belief, are in the custody of the Department of Justice." (*Id.* ¶ 41.) Without evidentiary support to the contrary, the amounts as alleged by the Plaintiff are deemed admitted.

establish a claim for embezzlement, a creditor must prove that: (1) the debtor appropriated the

creditor's property for the debtor's own benefit; and (2) the debtor acted with fraudulent intent or

deceit. *Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 400 (Bankr. N.D. Ill.

2005) (*citing Weber*, 892 F.2d at 538; *Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 802

(Bankr. N.D. Ill. 1995)).  A trust or fiduciary relationship need not be established in order to find

a debt excepted from discharge by an act of embezzlement. *Green v. Pawlinski (In re*

*Pawlinski)*, 170 B.R. 380, 390 (Bankr. N.D. Ill. 1994).

A creditor's debt may be found nondischargeable under the fraud or defalcation prong of

section 523(a)(4) if he is able to establish by a preponderance of the evidence that: (1) an express

trust or fiduciary relationship existed between him and the debtor; and (2) the debtor committed

fraud or defalcation in the course of that relationship.  *In re Woldman*, 92 F.3d 546, 547 (7th Cir.

1996); *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 358 (Bankr. N.D. Ill.

2004); *see also Grogan*, 498 U.S. at 291 (holding that the standard of proof for dischargeability

exceptions under section 523(a) is preponderance of the evidence).

An express trust requires an explicit declaration of trust, a clearly defined trust *res*, and an

intention to create a trust. *Hanson*, 432 B.R. at 774; *Monroe*, 304 B.R. at 358.  In the Seventh

Circuit, a fiduciary relationship on which a claim under section 523(a)(4) is based may arise

either when there is an express trust or when there is "a difference in knowledge or power

between fiduciary and principal which . . . gives the former a position of ascendancy over the

latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994); *see also In re McGee*, 353 F.3d

537, 541 (7th Cir. 2003) (explaining that "many fiduciary relations are characterized by

disparities in the knowledge or economic status of the participants"); *Woldman*, 92 F.3d at 547;

31

*Newsub Magazine Servs. LLC v. Rey (In re Rey)*, Nos. 04 B 35040, 04 A 4446, 04 A 4443, 2005

WL 894820, at *4 (Bankr. N.D. Ill. Apr. 18, 2005). Only those fiduciary relationships that

"impose[] real duties in advance of the breach" fall within the scope of section 523(a)(4).

*Hanson*, 432 B.R. at 774 (*quoting Marchiando*, 13 F.3d at 1116).

"Fraud" for purposes of the exception requires intentional deceit. *Fairgrieves*, 426 B.R.

at 754. "Defalcation" has been interpreted to mean "the misappropriation of funds held in trust

for another in any fiduciary capacity, and the failure to properly account for such funds." *Id.*

Although intent to misappropriate is not necessary, the Seventh Circuit has held that defalcation

requires at least reckless conduct. *Meyer*, 36 F.3d at 1385.

In its prior Memorandum Opinion, the court set forth an extensive discussion of the many

respects in which ERISA dictates bear hallmarks of a trust, the duties owed by ERISA

fiduciaries, and the several decisions addressing whether an ERISA fiduciary *ipso facto* qualifies

as a fiduciary for purposes of section 523(a)(4). *Jacobs*, 403 B.R. at 578-80. That discussion is

incorporated here by reference.

The Plaintiff argues that three components of the debt are nondischargeable under section

523(a)(4). Specifically, he maintains that the vested funds in the Plan are excepted under both

the embezzlement and fraud or defalcation prongs of the statutory exception. Additionally, he

claims that the amounts owed for unpaid wages and insurance withholdings are nondischargeable

under the fraud or defalcation prong.

The Defendant does not dispute that the part of the debt resulting from the withdrawal of

the Plan funds is nondischargeable under section 523(a)(4). He concedes that he administered

the Plan, that he was the only member of the committee acting as the fiduciary for the Plan, that

he had a fiduciary duty to the Plaintiff to properly manage the Plan, that he "without permission

or authority illegally withdrew funds from the pension plan belonging to [the Plaintiff]," and that

he pleaded guilty to criminal charges for "unlawfully stealing pension funds belonging to the

Plaintiff and others." (Def. L.R. 7056-2 Resp. ¶¶ 27, 29, 30, 31, 34.)

With regard to the elements required under the embezzlement prong of section 523(a)(4),

the court reiterates its concern discussed in the prior Memorandum Opinion with respect to

whether the Defendant appropriated property that actually belonged to the Plaintiff. *See Jacob*,

403 B.R. at 576. According to the Seventh Circuit, participants in pension plans like the one in

this proceeding do not hold an ownership interest in the assets of the trust fund; rather, their

interests are more accurately characterized as a vested claim for equivalent benefits. *See*

*Hickerson v. Velsicol Chem. Corp.*, 778 F.2d 365, 372 (7th Cir. 1985); *see also Salazar v. Sandia*

*Corp.*, 656 F.2d 578, 580 (10th Cir. 1981) (finding that "[t]he plaintiffs under the Plan had, and

have, a right to retirement benefits but they do not have rights to particular contributions");

*Bianchin v. McGraw-Edison Co.*, 438 F. Supp. 585, 588 (W.D. Pa. 1976) (explaining that "[t]he

only profit-sharing plan which might be considered 'vested' in the plaintiffs . . . w[as] unaffected

by the collective bargaining agreement, which more than adequately preserved for each

participant the entire *value* of his profit[-]sharing account as of that date") (emphasis added).

Notwithstanding the foregoing, the Defendant does not dispute that he illegally withdrew

monies from the Plan or that those monies "belong[ed] to the Plaintiff." Moreover, even if the

debt arising from the withdrawal of the Plan funds may not be excepted from discharge under the

embezzlement prong of section 523(a)(4), the facts clearly establish that the debt is

nondischargeable under the fraud or defalcation prong. The parties do not contest that a fiduciary

33

relationship existed between them or that the Plaintiff misappropriated the Plan funds during the course of that relationship. Thus, the court concludes that the portion of the debt resulting from the withdrawal of funds from the Plan is excepted from discharge under section 523(a)(4).

As for the unpaid wages and the health insurance deductions, the Defendant argues that that those parts of the debt are not excepted from discharge under the fraud or defalcation prong because the fiduciary relationship that he had with the Plaintiff existed only with respect to the Plan. Relying on *Jadom Furniture Co. v. Oct. Grp. Int'l, L.L.C.*, No. 05 C 6077, 2007 WL 2359767 (N.D. Ill. Aug. 14, 2007), the Defendant contends that the employer-employee relationship is not a fiduciary relationship for purposes of section 523(a)(4). In *Jadom*, the parties sought leave to file a third-party complaint against the executive sales manager of one of the defendant companies. *Id.* at *1. According to the defendants, the sales manager violated his fiduciary duty to the defendants by purchasing materials for the company's daily operations when the company was near insolvency. *Id.* at *4. Although the court noted that the relationship between the defendants and the sales manager was an employer-employee relationship, it did not, in fact, state that such a relationship cannot serve as the basis of a fiduciary relationship. Rather, the court concluded that the facts did not establish a breach of fiduciary duty because mere knowledge that a company is nearing insolvency does not require the company's employees to halt operations. *Id.* Thus, the Defendant's reliance on *Jadom* is inapposite.

As discussed in the prior Memorandum Opinion, a fiduciary relationship exists in situations which "seem[ ] to call for the imposition of the same high standard" of loyalty and care as a formal trust. *Marchiando*, 13 F.3d at 1115. These situations are "characterized by disparities in the knowledge or economic status of the participants," the fiduciary having the

34

superior status and/or knowledge to the defrauded creditor. *McGee*, 353 F.3d at 541; *Jabamoni v. Zordan (In re Zordan)*, Nos. 05 B 14742, 05 A 01711, 2006 WL 1791157, at *7 (Bankr. N.D. Ill. June 27, 2006) (noting that "only those fiduciary obligations in which there is substantial inequality in power or knowledge in favor of the debtor seeking the discharge of the debt and against the creditor resisting that discharge come with[in] the purview of § 523(a)(4)").[11]

The situation in this matter is characterized by disparities in both knowledge and status, the Defendant was in a position of ascendancy over the Plaintiff, and, thus, a fiduciary relationship existed not only with respect to the Plan but also in connection with the unpaid wages and the insurance deductions. The Defendant was the president and operator of Northwestern Plating and handled all of the daily affairs of the company. He was the signatory on the corporate bank account, responsible for ensuring that his employees were paid, and the sole administrator and trustee of the Plan. Moreover, the Defendant knew of the "extreme financial difficulty" that the company was facing, that it failed to pay its federal tax obligation, and that it was unable to maintain the premiums on its group health insurance policy. In contrast, the Plaintiff was an hourly employee of Northwestern Plating who had no knowledge of the financial

---

[11] Although the issue was not raised by the Plaintiff, some courts have found that, under Illinois law, officers and directors of insolvent corporations are treated as fiduciaries of the corporation's creditors for purposes of section 523(a)(4). *See, e.g., Cent. Ill. Bank v. Suhadolnik (In re Suhadolnik)*, Nos. 07-71951, 08-7115, 2009 WL 801611, at *2 (Bankr. C.D. Ill. Mar. 23, 2009); *Salem Servs., Inc. v. Hussain (In re Hussain)*, 308 B.R. 861, 867 (Bankr. N.D. Ill. 2004); *Energy Prods. Eng'g Inc. v. Reuscher (In re Reuscher)*, 169 B.R. 398, 404 (S.D. Ill. 1994). The court notes, however, that the Seventh Circuit just examined the issue and found that "[i]t is not sufficient to show merely that a debtor was a fiduciary under applicable state law. Although an officer or director of an insolvent corporation may be deemed a fiduciary for creditors under state law, the officer or director may not be deemed on that basis alone, a fiduciary under 11 U.S.C. § 523(a)(4)." *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, ___ F.3d ___, ___, No. 10-1882, 2011 WL 181482, at *4 (7th Cir. Jan. 21, 2011).

35

deterioration that was taking place. Although he certainly must have known that trouble was ensuing when the eleven paychecks were returned unpaid, the Defendant promised to issue new checks to replace those that were not honored. Additionally, the Plaintiff had no knowledge whatsoever that his health insurance had lapsed. He was notified on August 2, 2005 that the plant was closing, and, within the same month, he was laid off, along with all the rest of the company's employees. In short, a fiduciary relationship existed between the Plaintiff and the Defendant because of the imbalance in their duties and responsibilities on the job, as well as the difference of knowledge and power between the two parties.

Additionally, the Defendant acted fraudulently in the course of the parties' relationship. With respect to the unpaid wages, the undisputed facts establish that the Defendant intentionally deceived the Plaintiff by stating, on eleven separate occasions, that he would reissue checks to replace those that were not honored. Those checks were never reissued. As for the health insurance deductions, the Defendant contests neither that those deductions were wrongfully taken from the Plaintiff's paychecks for six months after the policy had lapsed nor that he failed to disclose to the Plaintiff that the policy had lapsed.

In sum, the Defendant acted as a fiduciary in connection with the debt arising from the monies withdrawn from the Plan, the unpaid wages, and the health insurance deductions, and the Defendant committed fraud or defalcation with respect to those components of the debt. Accordingly, those portions of the debt are nondischargeable under section 523(a)(4).

### 3. Section 523(a)(6)

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). To prevail

36

on a claim under section 523(a)(6), the Plaintiff must establish that the Defendant: (1) caused an injury; (2) acted willfully; and (3) acted maliciously. *See Fairgrieves*, 426 B.R. at 756; *Koplin v. Ginsberg (In re Ginsberg)*, Nos. 08 B 30836, 09 A 188, 2009 WL 4891815, at *5 (Bankr. N.D. Ill. Dec. 16, 2009); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004); *Scarpello*, 272 B.R. at 704.

The United States Supreme Court has stated that "[t]he word 'willful' in [section 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). In other words, "willful" means intent to cause injury, not simply the commission of an intentional act that results in injury. *Ginsberg*, 2009 WL 4891815, at *5 (*citing Geiger*); *Scarpello*, 272 B.R. at 704 (same). Under *Geiger's* rigorous standard, the Plaintiff here must establish that the Defendant actually intended to harm him and not merely that the Defendant acted intentionally and the Plaintiff was thus harmed. *See Vozella v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 849 (Bankr. N.D. Ill. 2007); *Prairie Eye Ctr. v. Butler (In re Butler)*, 297 B.R. 741, 747 (Bankr. C.D. Ill. 2003). That is, the facts must establish that the Defendant intended the tortious consequences of his actions. *See Geiger*, 523 U.S. at 61-62; *see also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004). Negligently or recklessly inflicted injuries do not fall within the ambit of section 523(a)(6). *Geiger*, 523 U.S. at 64.

The Supreme Court has not articulated the state of mind necessary to establish the intent to cause injury for purposes of section 523(a)(6). *Fairgrieves*, 426 B.R. at 757; *Basel-Johnson*, 366 B.R. at 849; *Butler*, 297 B.R. at 747; *Scarpello*, 272 B.R. at 704. However, recent decisions

37

have generally found that a creditor can demonstrate the requisite intent by showing that the debtor either subjectively intended to injure the creditor or knew that the injury was substantially certain to result from his acts. *Id.*

As to the malice element, conduct is "malicious" if it is undertaken "in conscious disregard of one's duties or without just cause or excuse." *Thirtyacre*, 36 F.3d at 700 (internal quotation omitted); *see also Fairgrieves*, 426 B.R. at 757; *Basel-Johnson*, 366 B.R. at 850. Accordingly, to establish malice under section 523(a)(6), the Plaintiff must show that the Defendant (1) intentionally committed a wrongful act, which (2) caused injury to the Plaintiff, and (3) was done without just cause or excuse. *See Basel-Johnson*, 366 B.R. at 850. The Defendant need not have acted with ill will or a specific intent to harm the Plaintiff in order for his conduct to be considered malicious. *See id.*

The Plaintiff alleges that the portion of the debt arising from the unpaid wages, the health insurance deductions, and the withdrawal of the Plan funds is nondischargeable under section 523(a)(6). In opposition to the Plaintiff's allegations, the Defendant contends that genuine issues of material fact regarding his intent preclude summary judgment under the statutory exception. Specifically, the Defendant argues that he had no intention of injuring the Plaintiff when the checks were issued, the health insurance deductions taken, or the Plan funds withdrawn. Rather, the Defendant says, the "intervening actions of the IRS" and the "financial turmoil" occurring at Northwestern Plating caused the checks to be dishonored. As to the withdrawal of the Plan funds, the Defendant maintains that he used those funds to keep the business operating from 2001 until it closed in August 2005. Thus, he argues, the withdrawal of those funds was neither willful nor malicious, and, in any case, he did not intend to injure the Plaintiff by withdrawing

38

them.[12]

The court rejects the Defendant's argument. As set forth above, one way a creditor can establish intent for purposes of the statutory exception is by showing that the debtor knew that injury was substantially certain to result from his conduct. *Fairgrieves*, 426 B.R. at 757; *Basel-Johnson*, 366 B.R. at 849; *Butler*, 297 B.R. at 747; *Scarpello*, 272 B.R. at 704. The "substantial certainty" test is consistent with the Code's "fresh start" goal in that it "focuses on whether the injury was in fact anticipated by the debtor[.]" *Fid. Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000) (internal quotation omitted) (discussing the "substantial certainty" test in the context of conversion). The test is also consistent with *Geiger*, which requires a showing that the debtor intended the consequences of his harmful actions. *Id.*

Here, the Defendant unquestionably knew that injury was substantially certain to result from his failure to reissue the Plaintiff's paychecks. Notwithstanding his "explanations" as to why the originally issued checks were returned without being honored, the Defendant clearly understood that the Plaintiff needed to be paid over the five-month period at issue. The Plaintiff notified the Defendant each time a check was returned for insufficient funds and continued working at Northwestern Plating in reliance on the Defendant's representations that those paychecks would be reissued.

---

[12] In the discussion of section 523(a)(6) in his memorandum in opposition to the motion for summary judgment, the Defendant also argues that collateral estoppel does not apply to the punitive damages award entered by the circuit court in the prior proceeding, even though that judgment order found "sufficient evidence of malice to warrant an entry of punitive damages." (*See* Pl. L.R. 7056-1 Stmt., Ex. 6, ¶ 3b.) As discussed *supra*, the Plaintiff has not met his burden of establishing the applicability of collateral estoppel under the facts of this adversary proceeding. Thus, the portion of the debt arising from the punitive damages award cannot serve as a basis for dischargeability under *any* of the provisions of section 523(a).

Similarly, the Defendant undoubtedly knew that both the lapse of the group health insurance and the continuing deductions from the Plaintiff's checks to pay for that insurance were substantially certain to injure the Plaintiff. In fact, the Defendant never told the Plaintiff either that his health insurance had lapsed or that deductions were continuing to be made, despite suggestions that the Defendant was fully aware of the situation.

Finally, the Defendant had to have known that injury was substantially certain to result from his withdrawal of funds from the Plan. Despite his disingenuous claim that he was using the funds in order to keep the company operating, the Defendant also admitted that the money went to pay for his personal expenses. Further, he conceded that he "willfully and unlawfully converted money from the pension fund" and that he withdrew that money "without permission or authority." As a businessman and corporate officer, the Defendant knew, without doubt, that the Plaintiff and all other employees participating in the Plan would be relying on the money that they had vested in the Plan to sustain them throughout their retirement years and that his withdrawal of that money was substantially certain to injure them.

In addition to the requisite intent under section 523(a)(6), the undisputed facts establish that the Defendant acted "in conscious disregard of [his] duties" and "without just cause or excuse," thus satisfying the malice element of the statutory exception. Accordingly, the court concludes that the portion of the debt in connection with the unpaid wages, the deductions for health insurance, and the withdrawal of funds from the Plan is excepted from discharge under section 523(a)(6).

40

## V. CONCLUSION

For the foregoing reasons, the motion of plaintiff Juan Zamora for summary judgment on

the adversary proceeding seeking to except from discharge the debt owed to him by debtor-

defendant David J. Jacobs will be granted in its entirety, and the court will enter judgment that

the debt, in the amount of $271,581.90, plus interest of 9% per year which has been accruing

since January 4, 2006, is nondischargeable.

Dated:   JAN 2 5 2011                    ENTERED:

SUSAN PIERSON SONDERBY
United States Bankruptcy Judge

41